UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Nathan Lomax,

           Plaintiff

v.

State of Nevada, et al.,

           Defendants

Case No. 2:23-cv-01284-CDS-EJY

**Order Granting the Defendants' Motion for Summary Judgment**

[ECF No. 28]

Incarcerated pro se plaintiff Nathan Louis Lomax brings this civil rights action under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment based on medical deliberate indifference and conditions of confinement. *See* Compl., ECF No. 7. Defendants William Hutchins, Gabriela Najera, and Bob Faulkner move for summary judgment. Mot. summ. j., ECF No. 28.[1] Lomax filed an opposition. *See* Opp'n, ECF No. 34. This motion is now fully briefed. *See* Reply, ECF No. 35. Because Lomax did not properly exhaust the available grievance procedures of the NDOC, I grant the defendants' summary judgment.

**I.    Background**

    **A.  Lomax's allegations in the complaint**[2]

Lomax alleges that in 2020, Southern Desert Correction Center (SDCC) was exposed to the COVID-19 virus when the air conditioning system stopped working in the dorms after other inmates were ill. ECF No. 7 at 2, ¶ C.[3]

---

[1] Counsel does not specify which defendants filed the motion for summary judgment. Because counsel D'Silva represents all defendants, I liberally construe the motion to be filed on behalf of all defendants.

[2] Unless otherwise noted, citations to the complaint are to provide context to this case and do not serve as a finding of fact.

[3] Lomax attaches to this complaint various grievances and kites he filed. *See* ECF No. 7 at 13–14 (Lomax filed a grievance on May of 2021, related to his conditions of confinement during COVID-19 and explained that when he tested positive for COVID-19 in December of 2020, he lost substantial weight, had breathing complications, and experienced headaches and chills); *see id.* at 25 (In August of 2021, Lomax submitted a medical kite related to his impaired mobility); *see id.* at 22 (In September of 2021, Lomax submitted a grievance for lack of medical treatment, weight loss, and back pain).

On June 21, 2023, Lomax was placed in Unit 2 for quarantine after contracting COVID-19 for a second time. *Id.* at 3. As alleged, Lomax did not receive treatment. *Id.* In addition, while in quarantine, Lomax was not given his psychiatric medication, Mirtazapene. *Id.*

During the week he was quarantined, Lomax lived in a unit with a broken toilet, broken bed, and blood splatter on the floor and walls. *Id.* He requested cleaning supplies, but his request was denied. *Id.* Also around this time, he was diagnosed with gout and high cholesterol. *Id.* Lomax was then placed on a multi-allergy dietary meal plan. *Id.* Correctional officers, however, refused to provide Lomax with the correct meals. *Id.* As a result, Lomax did not eat for three days, and Lomax submitted an emergency grievance. *Id.*

B. **Medical history**

1. *Lomax's Covid-19 medical history*

On December 29, 2020, Lomax kited to inquire about his COVID-19 test. Medical records relating to COIVD, Defs.' Ex. E, ECF No. 30-1 at 3 (sealed). That same day, the practitioner responded and informed Lomax that he tested positive on December 19, 2020. *Id.* On February 4, 2021, Lomax consented and received the COVID-19 vaccine. *Id.* at 4.

On March 16, 2021, Lomax kited, stating he was having difficulty breathing and had back pain. *Id.* at 5. That same day, Lomax was informed that he had been placed on a nursing sick call. *Id.*

On August 15, 2021, Lomax kited, asserting that he wanted to know the results of his recent COVID-19 test and that he did not receive a response to his previous kite. *Id.* at 6. In September of 2021, Lomax received a response with his results—he tested negative on July 20, 2021, and September 14, 2021. *Id.*

On June 20, 2023, Lomax kited that he needed a cold set up (cough drops and sinus). *Id.* at 7. That same day, a response was issued, stating an appointment was scheduled. *Id.* On June 21, 2023, Lomax was seen by a physician and given another COVID-19 test, which tested

positive. *Id.* at 8. The physician ordered Lomax to be moved to isolation during this time. *Id.* On June 28, 2023, Lomax was cleared from quarantine. *Id.* at 9.

### 2. *Lomax's medical history related to his legs*

On September 19, 2019, Dr. Leon Jackson examined Lomax's right knee and found that there was no fracture or joint effusion. *See* Medical records relating to feet and legs, Defs.' Ex. F, ECF No. 30-2 at 2 (sealed). On December 12, 2019, there was an MRI order placed for Lomax. *Id.* at 3. On January 8, 2020, Lomax was given a knee support for his right knee. *Id.* at 4.

On January 28, 2020, Lomax submitted a kite indicating that he slipped in the shower, injuring his right knee. *Id.* at 5. That same day, Lomax was informed that he was placed on sick call to be seen by medical staff. *Id.*

On April 19, 2020, Lomax was seen by medical. *Id.* at 7. The medical provider noted that Lomax's meniscus on his right knee was torn. *Id.* On May 7, 2020, Lomax was seen by a medical provider for chronic knee pain. *Id.* On September 7, 2020, an order was submitted to renew Lomax's prescription for Meloxicam, a pain medication he had previously been prescribed. *Id.* at 10. On November 3, 2020, Lomax was referred by Terence Agustin for an MRI of his knee. *Id.* at 12. The results showed he had a tear in his right knee and orthopedic surgery was recommended. *Id.* at 12–13. Lomax was given several medications, insoles for his shoes, and a knee brace. *Id.* at 15–21.

On June 16, 2021, Lomax had a radiograph taken of his right knee, and Dr. Wulff made findings that there was no evidence of acute fracture, dislocation or joint effusion. *Id.* at 23. On August 8, 2021, Lomax kited, stating he was having trouble with his feet and legs. *Id.* at 24. In response to his kite, he was placed on the database for a provider appointment. *Id.*[4] On September 15, 2021, Nurse Practitioner (NP) Omandac received a request for surgical treatment related to Lomax's right knee, which was approved on October 6, 2021. *Id.* at 25.

---

[4] The record indicates that Lomax was given additional pain medication, a knee brace, and an elastic knee support. ECF No. 30-2 at 33–41.

On October 7, 2021, Lomax kited related to mobility issues with his legs. *Id.* at 26. That same day, Lomax was informed that he would be seen in approximately six to nine weeks. *Id.* He was also advised that the wait time was extended due to COVID-19 guidelines. *Id.* On October 21, 2021, Lomax kited again, stating he was having mobility issues, and both of his legs were hurting. *Id.* at 27. On November 2, 2021, Lomax was prescribed additional medication. *Id.* at 28. Lomax continued to submit kites regarding medical issues with swelling in his legs, but he acknowledged that he had received care by way of his prescribed medication and knee brace. *See id.* at 29, 31, 37, 42, 44.

On April 3, 2023, Lomax was referred to an orthopedist regarding his knee pain and was given another cane. *Id.* at 45. On April 12, 2023, Lomax's referral was approved. *Id.* On April 20, 2023, an X-ray was taken of both of Lomax's knees. *Id.* at 49. Dr. Jackson stated in his findings that no fracture or joint effusion were evident. *Id.* Dr. Jackson further noted there was minimal degenerative changes of the knees. *Id.*

On September 6, 2023, Lomax was seen by an Orthopedist at University Medical Center (UMC). *Id.* at 55. The medical providers at UMC noted that an MRI of Lomax's right knee, taken on November 3, 2020, revealed a tear in his ACL. *Id.* Upon reviewing Lomax's medical history, the providers did not recommend surgery. Instead, they recommended treatment with exercises, pain medication, and supportive medical devices. *Id.* at 55–58. On October 9, 2023, NDOC renewed Lomax's prescription for Meloxicam for a period of 180 days. *Id.* at 59. On December 11, 2023, NP Omandac requested that Lomax be referred to orthopedics. *Id.* at 60. On December 19, 2023, the request was authorized. *Id.*

### 3.  *Lomax's food allergy medical history*

On February 1, 2023, Lomax was placed on a multi-allergy diet. *See* Medical records relating to special diet, Defs.' Ex. G, ECF No. 30-3 at 2. NP Omandac's medical diet order indicated that Lomax would be placed on the gout diet for 18 days. *Id.* at 4. On August 3, 2023, Lomax was again placed on a gout diet by NP Omandac. *Id.* at 6. On August 8, 2023, NP

Omandac's medical diet order indicated that Lomax would undergo testing for food allergies. *Id.* at 7. On July 9, 2024, Lomax's diet plan was renewed for one year. *Id.* at 9.

### C. Grievance history

Lomax filed three grievances related to the allegations in his complaint: 2006-31-09937; 2006-31-17583; 2006-31-57059.

#### 1. *Grievance 2006-31-09937*

On December 23, 2020, Lomax submitted a second-level grievance (2006-31-09937), stating that he had submitted kites pleading for help for his right knee but was denied treatment. Grievance, Defs.' Ex. H, ECF No. 28-5 at 2. On February 16, 2021, the SDCC grievance coordinator issued an improper grievance memo stating that Lomax's second-level grievance was denied because the "[f]irst [l]evel [g]rievance cannot be submitted if the [i]nformal [g]rievance was not accepted." *Id.* at 3. He was also advised to resubmit "at the informal level and attach all previously submitted documentation and responses related to this grievance log number." *Id.* Lomax received this memo on February 25, 2021. *Id.* at 4.

On February 27, 2021, Lomax filed an informal grievance reasserting his claims. ECF No. 28-5 at 5. In particular, he asserted that he had submitted numerous kites regarding complications with his right leg and right knee but had not received treatment. *Id.* On May 12, 2021, SDCC denied Lomax's informal grievance, informing Lomax that he was evaluated by NDOC's medical provider on May 7, 2021, and that his MRI was reviewed during his visit. *Id.* at 8–9.

On May 26, 2021, Lomax filed a first-level grievance, reiterating his claim regarding complications with his right knee and asserting that his condition had worsened. *Id.* at 10. Therein, he further asserts that during the May 7, 2021 visit, his preexisting medications were refilled, he received an annual brace allowance, and he was informed that he would be referred

5

to Dr. Wolf[5] regarding his MRI. *Id.* at 11. On June 1, 2021, the SDCC grievance coordinator issued a first-level grievance rejection. *Id.* at 14–15. The reason for the rejection was "missing documentation." *Id.* The memo stated that, per AR 740.084D(5), all documentation must be submitted at this level with his grievance. *Id.* Lomax received this memo on July 14, 2021. *Id.*

On July 31, 2021, SDCC received Lomax's informal grievance reasserting his prior claim regarding his right knee. ECF No. 28-5 at 16–17. On July 31, 2021, the SDCC grievance coordinator issued an improper grievance memo, rejecting Lomax's grievance. *Id.* at 19. In that, SDCC explained that the informal grievance was missing documents DOC-3091 and 3098 from November 2, 2020. *Id.* Further, it explained that document DOC-3091 and the response from February 27, 2021, were also missing. *Id.* Lomax was instructed to resubmit his grievance at the first level and was also advised to do so within five days of receiving the memo. *Id.* Lomax received this memo on September 1, 2021. *Id.* at 20.

On September 2, 2021, Lomax filed another informal grievance, again asserting his claim regarding complications with his right knee. ECF No. 28-5 at 21. On September 22, 2021, the SDCC grievance coordinator issued an improper grievance memo, rejecting Lomax's grievance, explaining that he submitted an "[i]nformal response for informal grievance dated [February 27, 2021]. You must also proceed to the first level." ECF No. 28-5 at 23. Lomax received this memo on October 1, 2021. *Id.*

### 2. *Grievance 2006-31-17583*

On March 19, 2021, Lomax attempted to file a first-level grievance (2006-31-17583), unrelated to his knee pain, asserting that he had contracted COVID-19 and did not receive treatment. Grievance, Defs.' Ex. I, ECF No. 28-6 at 2. In the grievance, Lomax states that he submitted a grievance asserting cruel and unusual punishment because, on December 19, 2021, he contracted COVID-19 yet never received treatment for it. *Id.* at 2–4. On April 13, 2021, the

---

[5] I note that Lomax's grievance refers to a "Dr. Wolf," and I interpret this to be a reference to "Dr. Wulff," the orthopedic clinic provider. *See* Defs.' Ex. F, ECF No. 30-2 at 23.

SDCC grievance coordinator rejected Lomax's grievance. *Id.* at 8–9. Therein, Lomax was informed that he "may not submit a First Level Grievance if the Informal Grievance was not accepted. Resubmit at the informal level and attach all previously submitted documentation and responses related to this grievance log." *Id.* Lomax was also informed that he had five days to correct and resubmit his grievance. *Id.* On May 4, 2021, Lomax received the rejection for his first level grievance. *Id.* at 8.

On May 5, 2021, Lomax filed an informal grievance, asserting that the rest of the prison got sick, the air conditioning was shut off, and the inmates were placed in quarantine. ECF No. 28-6 at 10. On July 17, 2021, Lomax's grievance was denied. *Id.* at 11. The rejection stated that the air conditioning issue was beyond the medical unit's control. *Id.* The rejection also informed Lomax that SDCC had provided the results of positive covid tests through kites and that patients who requested to be seen have been attended to. *Id.* SDCC further informed Lomax that it had not receive any kites about whether he experienced symptoms in the preceding three months. *Id.*

On September 3, 2021, Lomax appealed to the first level, reasserting his claims. ECF No. 28-6 at 12. On November 7, 2021, SDCC issued a rejection, denying Lomax's first-level grievance. *Id.* at 13. SDCC explained its protocol at the time and stated that it was not possible to move all inmates from their housing units into isolation. *Id.*

### 3.  *Grievance 2006-31-57059*

On August 17, 2023, Lomax filed an informal grievance (2006-31-57059). Grievance, Defs.' Ex. J, ECF No. 28-7. In this grievance, Lomax asserted that his health had been declining, detailed his medical issues, and explained that he had submitted kites to resolve these issues. *Id.* at 2. He further explained that he had a cyst on his ACL since early 2020, that he was supposed to have a procedure performed, which was ultimately denied, and that condition has remained untreated. *Id.* Lomax further asserted that he was diagnosed with high cholesterol and was at

some point placed on a diet, which was later denied. *Id.* at 3. Lomax also asserted that, on three occasions, he had been denied a meal entirely. *Id.*

On October 20, 2023, SDCC denied Lomax's grievance, explaining that he was seen by an outside provider for his chronic knee pain on September 6, 2023. ECF No. 28-7 at 9. Lomax was informed that he was started on an alternate multi-allergy diet on February 1, 2023. *Id.* SDCC further explained that medical diets are recommended by the practitioner and approved by the medical director, and that blood tests had shown no evidence of any food allergy. *Id.* As such, SDCC explained that Lomax was placed on a regular diet. *Id.* Lomax was also advised that he had been scheduled to see an SDCC provider to see if he qualifies for reclassification to help with a potential transfer to another medical facility. *Id.*

### D. Lomax's initiates this action

Lomax initiated this action on August 17, 2023. *See* ECF No. 1. In Lomax's complaint, he sues multiple defendants for events that took place while he was incarcerated at the Southern Desert Correctional Center (SDCC). *See* ECF No. 7 at 1. After screening Lomax's complaint, the court allowed two claims to proceed: (1) the Eighth Amendment deliberate medical indifference claim against defendants Hutchings, Najera, and Faulkner; and (2) the Eighth Amendment conditions of confinement claim against defendants Hutchings and Najera. ECF No. 6 at 8. The defendants then filed this pending summary judgment motion. ECF No. 28.

## II.    Legal standard

### A. Summary judgment

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit" based on the governing law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "mere disagreement or the bald assertion that a genuine

8

issue of material fact exists" is not enough to defeat summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Because the plaintiff bears the burden of proof at trial, a moving defendant need only point to an absence of evidence on an element of the plaintiff's case. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250–51. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

### B.  Administrative exhaustion

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before filing a civil-rights action to redress alleged constitutional violations by prison staff. 42 U.S.C. § 1997e(a). The Supreme Court has interpreted the PLRA as "requir[ing] proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). Of course, "[a]n inmate need exhaust only such administrative remedies as are 'available,'" which requires correctional facilities to have procedures that "are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016). In *Ross v. Blake*, the Supreme Court provided a non-exhaustive list of "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. An administrative remedy may be considered unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; when the

administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or when "prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

To succeed on a PLRA-exhaustion defense at summary judgment, a defendant must "prove that there was an available administrative remedy" that the prisoner did not exhaust; the burden then shifts to the plaintiff to provide evidence that the remedy was unavailable to him. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)). But "the ultimate burden of proof remains with the defendant." *Id.* The trial court should grant summary judgment based on a lack of exhaustion only "[i]f undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust." *Id.*

### III.    Discussion

The defendants argue that their summary judgment motion should be granted because: (1) the PLRA bars Lomax's claims; (2) they are entitled to qualified immunity; (3) Lomax's claims are barred by the statute of limitations; and (4) Lomax cannot establish a causal connection showing the defendants personally participated in his claims. ECF No. 28. Whether Lomax exhausted his administrative remedies is a threshold issue. *See United States v. Morfin-Rios*, 2023 U.S. Dist. LEXIS 116878, at *3 (S.D. Cal. July 5, 2023). So I address it first. And because I agree that Lomax failed to exhaust his administrative remedies, in violation of the PLRA, the defendants' motion is granted.[6]

**A.   Lomax failed to exhaust his administrative remedies as required by the PLRA.**

To exhaust administrative remedies within the NDOC, inmates must follow the procedures outlined in Administrative Regulations (AR) 740.[7] As set forth in that AR, the

---

[6] Because I find that Lomax's claims are barred by the PLRA, I do not address the defendants' remaining arguments on the merits.

[7] As an NDOC AR is publicly available, I may take judicial notice of it. *See Brown v. Valoff*, 422 F.3d 926, 931 nn.7, 9 (9th Cir. 2005) (taking judicial notice of prison's Department Operations manual and California Department of Correction Administrative Bulletin); *see also* Fed. R. Evid. 201(b)(2).

inmate must complete three levels of grievance: informal, first, and second. *See* AR 740.08–.10.[8] Generally, inmates must first file an informal grievance within six months of the action giving rise to a medical claim. AR 740.08(4)(A); *Jackson v. Russell*, 2025 U.S. Dist. LEXIS 5058, at *5 (D. Nev. Jan. 8, 2025); AR, Defs.' Ex. L, ECF No. 28-9 at 11. The prison has 45 days to respond to that informal grievance. AR 740.08(12). If the prison denies the informal grievance, the inmate has five days after the receipt of the denial to proceed to the next grievance level. AR 740.08(12)(A). The inmate can then file a first-level grievance, which the prison has 45 days to respond to. AR 740.09(5). If the inmate receives another denial, he has five days to file an appeal to proceed to his second-level grievance. AR 740.09(5)(A). In short, with each denial, the inmate must file an appeal to proceed to his next-level grievance within five days to exhaust the facility's administrative procedures. *Jackson*, 2025 U.S. Dist. LEXIS 5058, at *5.

Here, the defendants argue that both of Lomax's claims are barred by the PLRA because Lomax failed to exhaust his administrative remedies. ECF No. 28 at 18. In opposition, Lomax conclusively argues—without providing support—that after several failed attempts to "grieve the process," he believed he was being deterred by the institution, so he filed a civil complaint. ECF No. 34 at 2. Lomax further asserts that his grievances were denied. *Id.* Indeed, his grievances were denied. But the record demonstrates that Lomax was afforded multiple opportunities pursuant to the AR to appeal to the next level or appropriately resubmit a grievance in compliance with the AR, but he failed to do so. ECF No. 28-5 at 3, 14–15, 19; ECF No. 28-6 at 8–9, 11; ECF No. 28-7 at 9. Each grievance suffers from the same deficiencies—that is, Lomax's failure to exhaust.

There is no readily apparent evidence supporting Lomax's argument that the administrative remedies were exhausted. The record demonstrates that Lomax attempted to initiate his grievance process, but his grievances were rejected. The record is devoid of attempts by Lomax to fix the issues highlighted by SDCC and the SDCC grievance coordinator in order to

---

[8] *See also* Admin. Reguls., Defs.' Ex. L, ECF No. 28-9.

fully comply with AR 740. *See, e.g.*, ECF No. 28-5 at 14–15. Rather, as it relates to Grievances 2006-31-09937 and 2006-31-17583, Lomax attempted to correct deficiencies identified in the rejections, but never completed the grievance process. *See* ECF No. 28-5; ECF No. 28-6. And as it relates to Grievance 2006-31-57059, Lomax never grieved the rejection of his informal grievance to the next level. *See* ECF No. 28-7.

While the court may waive the PLRA mandatory exhaustion requirement when there is a "genuine dispute that the grievance procedure was effectively unavailable," Lomax has not shown such unavailability. *See Rodriguez v. Cain*, 2022 U.S. Dist. LEXIS 89323, at *16 (D. Or. May 17, 2022) (citation omitted). So, this was not a situation where the opportunity to file a grievance operated as a "simple dead end." *Ross*, 578 U.S. at 643–44. Lomax's grievances were reviewed, rejected, and denied properly. Lomax did not follow the process set forth in AR 740 and there is no evidence showing he was unable to do so. Consequently, the defendants are entitled to summary judgment on Lomax's medical indifference claim and conditions of confinement claim based on the failure to exhaust the PLRA administrative remedies.

## IV. Conclusion

IT IS HEREBY ORDERED that the defendants' motion for summary judgment **[ECF No. 28] is GRANTED.**

The Clerk of Court is kindly directed to enter judgment in favor of the defendants and to close this case.

Dated: March 19, 2026

_____
Cristina D. Silva
United States District Judge